IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

GARY D. MADLE                                                                                    PLAINTIFF

V.                                              NO. 13-3024

CAROLYN W. COLVIN,[1]
Acting Commissioner of the Social Security Administration                    DEFENDANT


**MEMORANDUM OPINION**

Plaintiff, Gary D. Madle, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff protectively filed his current applications on June 9, 2009, alleging an inability to work since November 1, 2004, due to "Bilateral carpal tunnel, panic attacks, shoulders, bone

---

[1]Carolyn W. Colvin, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

AO72A
(Rev. 8/82)

spur." (Tr. 12, 190-192, 245, 251). An administrative hearing was held on January 14, 2011, at which Plaintiff appeared with counsel and testified. (Tr. 45-91).

By written decision dated April 29, 2011, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe - disorder of the left shoulder, degenerative joint disease, osteoarthritis, bilateral carpal tunnel syndrome, and degenerative disk disease of the lumbar and cervical spine. (Tr. 14). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 17). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform the full range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). (Tr. 17). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff was capable of performing past relevant work as a public school teacher, as this work did not require the performance of work-related activities precluded by the Plaintiff's RFC. (Tr. 20).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which considered additional information, and denied that request on September 27, 2012. (Tr. 4-7). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 7). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 10, 11).

## II.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir.

2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or

mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC). See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

### III. Discussion:

Plaintiff makes the following arguments on appeal: 1). The ALJ's RFC determination is not supported by substantial evidence; and 2) The ALJ's decision denying benefits is not supported by substantial evidence. (Doc. 10).

### A. RFC Determination:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642,

646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

Plaintiff first argues that the ALJ erred by not requiring a consultative physical examination in this case. He contends that although the ALJ admitted that Plaintiff had a number of impairments that would cause limitations, he relied upon his own judgment without medical support to arrive at the conclusion that he can perform light work despite the limitations.

The Court believes the 738 page record contains substantial evidence from which the ALJ could determine that Plaintiff could perform light work, and that the ALJ did not err by not ordering a consultative examination. The record reflects numerous medical records beginning in 2003 and continuing through 2011. In addition to the records from Plaintiff's treating physicians, there is a Neuropsychological Evaluation, conducted by Vann Smith, Ph.D., ACPE, ABPS, AAPM, on August 17, 2009 (Tr. 596-599); a Mental RFC Questionnaire completed by Dr. Smith on August 17, 2009 (Tr. 600); a Physical RFC Assessment completed by non-examining consultant Dr. Jim Takach (Tr. 615-622); a Mental Diagnostic Evaluation completed by W.Charles Nichols, Psy.D., Clinical Psychologist at The Family Psychological Center, P.A., dated September 30, 2009 (Tr. 624-630); A Psychiatric Review Technique Form completed by Dr. Kay Cogbill, dated October 22, 2009 (Tr. 631-643); and a Case Analysis completed by Jerry Mann on February 12, 2010 (Tr. 665).

The longitudinal history in this case reveals an individual who complained of left shoulder pain for many years. A left shoulder MRI performed on January 6, 2006, revealed mild indentation of the rotator cuff at the AC joint, possibly due to early arthritis, and no other abnormalities were identified. (Tr. 392). Plaintiff participated in physical therapy in January and

part of February of 2005, and on February 14, 2005, it was reported that he failed to return to physical therapy and missed his last four scheduled appointments. (Tr. 395). He was therefore discharged from physical therapy, secondary to poor results and failure to return to therapy. (Tr. 395).

Plaintiff was seen by orthopedic specialist, Dr. Terry Sites in 2005, and was given a steroid injection. (Tr. 378-379). It is noteworthy that at the February 16, 2005 examination, Dr. Sites reported that x-rays of his left shoulder demonstrated no abnormality, and that he demonstrated an "inordinate amount of pain on exam for what one would expect is a mild AC separation and/or rotator cuff pathology." (Tr. 379). Dr. Sites also reported that Plaintiff's response and coping mechanism with pain seemed deficient and were complicated by his chronic narcotic use. (Tr. 378). "Pain management and/or behavior modification may ultimately be the most helpful treatment tool in this setting." (Tr. 378). When Plaintiff returned to Dr. Sites on April 6, 2005, he was reported as having made improvement following the injections and that his motion was full and there was no crepitation. (Tr. 380). The next time Plaintiff saw Dr. Sites was March 22, 2006, complaining that his left shoulder was hurting again, and he received another injection. (Tr. 381). Then, on October 31, 2007, Plaintiff returned to see Dr. Sites, complaining that his left shoulder continued to bother him. (Tr. 382). Upon physical examination, there was no inhibition of left shoulder motion, he had positive impingement with tenderness to palpation over the AC joint and greater tuberosity, and in the periscapular area, without crepitation or pain. (Tr. 382). There was good strength with some pain for resisted elevation and mild weakness. (Tr. 382). Dr. Sites determined that an updated MRI needed to be done. (Tr. 382). On November 28, 2007, Dr. Sites reported that he reviewed the MRI films,

which showed some AC joint arthropathy and a possible rotator cuff tear. (Tr. 441).

On December 12, 2007, Dr. Sites performed an arthroscopy of Plaintiff's left shoulder; a subsacromial decompression with anterolateral acromioplasty and release of coracoacromial ligament; a major glenohumeral debridement - nonincidental with debridement of SLAP lesion labrum, glenoid chondromalacia and synovectomy; and an open distal clavicle resection. (Tr. 386). A week later, examination of the incision revealed it was healing nicely. (Tr. 457). Plaintiff subsequently began physical therapy for his shoulder. (Tr. 399). By reported dated January 17, 2008, the physical therapy record reveals that Plaintiff failed to show for all of the scheduled appointments after January 10, 2008, and they were uncertain of his progress. They therefore discharged Plaintiff, secondary to lack of compliance with his physical therapy intervention. (Tr. 398).

Plaintiff returned to Dr. Sites on February 18, 2009, desiring a shoulder replacement. (Tr. 385). Physical examination by Dr. Sites revealed full shoulder range of motion, some pain at the limits, no crepitation, good strength all around, and that he had tenderness to palpation around all areas of his left shoulder, without crepitation or swelling. (Tr. 385). Dr. Sites did not believe Plaintiff was a good candidate for joint replacement without more significant progression of disease, and after discussion, Plaintiff desired a cortisone injection. (Tr. 385).

In a September 9, 2009 Physical RFC Assessment, Dr. Jim Takach found that Plaintiff would be able to perform light work, and that Plaintiff retained the ability to function with light work limits, and added restrictions of no rapid repetitive motion of the wrists and overhead pushing/pulling. (Tr. 616). He also found Plaintiff could occasionally climb ramps, stairs, ladders, ropes, scaffolds, balance, stoop, kneel, crouch, and crawl. (Tr. 617).

In 2010, Plaintiff began complaining of pain in his knees. (Tr. 693). Dr. Tarik Sidani recommended physical therapy and anti-inflammatories. (Tr. 690). On March 1, 2010, Plaintiff advised Dr. Sidani that he did not go to any of the therapy he prescribed. (Tr. 690). However, there is a Physical Therapy Initial Evaluation from North Arkansas Regional Medical Center Rehab Therapy, dated March 15, 2010, wherein the physical therapist reported that Plaintiff was given a comprehensive home exercise program to address strength deficits and proprioceptive limitations, and also reported a concern that Plaintiff may have a malingering disposition with the chronic nature of his history as well as objective findings. (Tr. 688). Plaintiff was discharged to independent home exercise program progression. (Tr. 689). On July 2, 2010, Dr. Tarik Sidani performed a right knee arthroscopy with excision of suprapatellar synovial plica and chondroplasty medial femoral condyle. (Tr. 682).

Plaintiff also complained of back and neck pain and migraine headaches. (Tr. 677). However, on August 29, 2010, it was reported by North Arkansas Regional Medical Center that his neck was non-tender, with full range of motion, and supple; his extremities were normal, with normal range of motion; and he had a normal back inspection. (Tr. 678). In addition, on August 30, 2010, an MRI of Plaintiff's brain was normal. (Tr. 666, 701).

Subsequent to the hearing before the ALJ, on January 19, 2011, Dr. Charles Klepper completed a cervical spine RFC questionnaire. (Tr. 708-712). Dr. Klepper indicated that he had seen Plaintiff three times, beginning on August of 2010, and gave Plaintiff severe limitations, including the fact that Plaintiff would miss more than four days per month at any employment. (Tr. 712).

On January 26, 2011, Dr. Glady Jacob saw Plaintiff at Branson Neurology and Pain

Center. (Tr. 723-724). Dr. Jacob noted that Plaintiff reported that Hydrocodone and Flexeril helped with his pain. (Tr. 723). Dr. Jacob also found that Plaintiff had 5/5 power in both upper and lower extremities and that bulk and tone were normal, and his stance was steady. (Tr. 724). Dr. Jacob's impression was : chronic pain secondary to multiple surgeries including left shoulder surgery and bilateral hand surgery for carpal tunnel syndrome, and degenerative changes in his neck and cervical sponylosis. (Tr. 724).

Plaintiff saw Dr. Klepper again on April 6, 2011, stating that he was "draggy," had scales on his legs, hands, and feet, and complained of migraine headaches. (Tr. 735). Dr. Klepper also noted that Plaintiff smoked 5 cigarettes or less per day. (Tr. 735). Dr. Klepper assessed Plaintiff with bronchitis, acute, degenerative joint disease, and degenerative disc disease. (Tr. 736).

On July 18, 2011, after the ALJ issued his unfavorable decision, Plaintiff again saw Dr. Klepper to discuss pain management. (Tr. 733). Plaintiff advised Dr. Klepper he had been denied disability, he was no longer seeing a pain management specialist, and wanted narcotics. (Tr. 733). Dr. Klepper noted that he was able to do usual activities, had good exercise tolerance, and had no weight loss or gain.(Tr. 733). Dr. Klepper assessed Plaintiff with degenerative joint disease and degenerative disc disease. (Tr. 734).

Plaintiff saw Dr. Kristina E. Duffy and Dr. Luis C. Natali of Branson Neurology and Pain Center on September 12, 2011 and December 12, 2011, respectively. (Tr. 715-718, 720-721). Plaintiff presented limited movements in the upper and lower extremities because of pain when he visited with Dr. Natali, and also complained of headaches. (Tr. 718). Dr. Natali started Plaintiff on Topamax for his headaches. Plaintiff also presented with staggering and memory problems, and Dr. Natali reported that the staggering and problems walking "could just be part

of his malingering to get disability." (Tr. 718). However, he was going to check an MRI of the brain to rule out ischemic disease and an "NCS/EMG" to rule out possible peripheral neuropathy. (Tr. 718).

Although Plaintiff did not address his alleged mental impairment issues in his appeal, the Court finds it appropriate to address some of the mental examination reports, as they clearly go to the Plaintiff's credibility.

The ALJ concluded that he would give no credence to Dr. Smith's opinion, which was justified not only by the opinion of Dr. Nichols, but also by the fact that Dr. Smith's opinion was based upon Plaintiff's self-report. The ALJ also noted the inconsistent statements Plaintiff gave to Dr. Smith and Dr. Nichols. For example, Dr. Nichols noted that Plaintiff reported no regular alcohol use to Dr. Smith but admitted to Dr. Nichols a pattern of excessive alcohol use for many years with continued drinking. (Tr. 627).  In addition, Plaintiff reported to Dr. Nichols that he cheated his way through college and earned two degrees by manipulating other people to do his work. (Tr. 624). Based upon the evidence as a whole, the ALJ gave Dr. Nichols' opinion substantial weight. (Tr. 17).

The ALJ discussed the opinion of Dr. Sites, and although Dr. Sites stated that Plaintiff could not engage in overhead work, the ALJ found that it was based on Plaintiff's report of pain and was prior to his shoulder surgery. Therefore, the ALJ concluded that any limitations found by Plaintiff's physicians based on subjective complaints or upon tests that rely on Plaintiff's cooperation, were given no weight because of Plaintiff's lack of credibility. (Tr. 19). The ALJ also noted Plaintiff's non-compliance with physical therapy, noting that Plaintiff's failure to follow prescribed treatment is just further proof that his shoulder injury was not as limiting as

alleged and that Plaintiff's allegations were not entirely credible. (Tr. 19)

In addition, the Appeals Council considered additional evidence that was not before the ALJ, such as records of Dr. Klepper and Branson Neurology and Pain Center. When the Appeals Council has considered material new evidence and nonetheless declined review, the ALJ's decision becomes the final action of the Commissioner. The Court then has no jurisdiction to review the Appeals Council's action because it is a nonfinal agency action. See Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir.1992). At this point, the Court's task is only to decide whether the ALJ's decision is supported by substantial evidence in the record as a whole, including the new evidence made part of the record by the Appeals Council that was not before the ALJ. As the United States Court of Appeals for the Eighth Circuit has noted, "this [is] a peculiar task for a reviewing court." Riley v. Shalala, 18 F.3d 619, 622 (8th Cir.1994). However, once it is clear that the Appeals Council considered the new evidence, then the Court must factor in the evidence and determine whether the ALJ's decision is still supported by substantial evidence. This requires the Court to speculate on how the ALJ would have weighed the newly submitted evidence had it been available at the initial hearing. Flynn v. Chater, 107 F.3d 617, 621 (8th Cir.1997). Thus, the undersigned has endeavored to perform this function with respect to the newly submitted evidence, and believes the new evidence would not have changed the ALJ's decision.

Clearly, in this case, the ALJ had before him sufficient medical evidence and testimony from which he could determine Plaintiff's ability to do work-related activities. Furthermore, the ALJ gave sufficient reasons for giving the weight he gave various opinions.

Based upon the foregoing, the Court hereby finds there is substantial evidence to support

the ALJ's RFC determination, and the weight he afforded the various opinions. In addition, there is substantial evidence to support the ALJ's decision to deny Plaintiff disability benefits.

**IV.    Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 16th day of April, 2014.

*/s/ Erin L. Setser*
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE